# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WISCONSIN

In the Matter of the Seizure of
(Address or brief description of property or premises to be seized)

UP TO $3,000 IN FUNDS ON DEPOSIT
IN AN ACCOUNT AT THE WAUKESHA COUNTY
JAIL ASSOCIATED WITH INMATE XAVIER
DOUGLAS WITH A SPILLMAN
NAME NUMBER OF 1593717

Case Number: 20-933M(NJ)

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, Christina Porter, being duly sworn depose and say:

I am a Detective with the West Allis Police Department and a Task Force Officer assigned to the Federal Bureau of Investigation's Child Exploitation Human Trafficking Task Force, Milwaukee Division, and have reason to believe that in the Eastern District of Wisconsin there is now certain property, namely, up to $3,000 in funds on deposit in an account at the Waukesha County Jail associated with inmate Xavier Douglas with a Spillman name number of 1593717, that is civilly forfeitable under 18 U.S.C. § 981(a)(1)(C), including cross-references to 18 U.S.C. §§ 1956(c)(7) and 1961(1), and 18 U.S.C. § 984, and criminally forfeitable under 18 U.S.C. §§ 981(a)(1)(C) and 28 U.S.C. § 2461, as property traceable to proceeds of interstate extortion, committed in violation of 18 U.S.C. § 875(d), and which property is therefore also subject to seizure for purposes of civil forfeiture under 18 U.S.C. § 981(b) and for purposes of criminal forfeiture under 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(f).

The application is based on these facts:

✓ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Sworn to before me, and subscribed in my presence

*(signature)*
Signature of Affiant
Christina Porter, TFO, FBI

4/24/20 @ 9:00 a.m
Date and time issued

at Milwaukee, Wisconsin
City and State

*(signature)*
Nancy Joseph, U.S. Magistrate Judge
Name & Title of Judicial Officer
Signature of Judicial Officer

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEIZURE WARRANT

I, Christina Porter, having been duly sworn on oath, state as follows:

## Background

1. I am a detective with the West Allis Police Department and am currently assigned to the Sensitive Crimes Unit. I have been a law enforcement officer since May of 2004. As part of my official duties, I am assigned as a task force officer (TFO) to the Federal Bureau of Investigation's (FBI) Child Exploitation Human Trafficking Task Force, Milwaukee Division. As part of my duties as a detective and TFO, I investigate violations of law relating to child pornography and exploitation. I have gained experience in conducting these investigations through training and through my everyday work as a Sensitive Crimes Detective and a TFO. That work frequently includes executing search warrants and conducting interviews of subjects suspected of trading in and manufacturing child pornography or otherwise sexually exploiting children with the use of technology. I have received training relating to the investigation of Internet Crimes Against Children (ICAC), including training in the investigation and enforcement of state and federal child pornography laws in which computers and other digital media are used as a means for receiving, transmitting, and storing child pornography.

2. I submit this affidavit in support of an application that seeks issuance of a warrant to seize up to $3,000 in funds on deposit in an account at the Waukesha County Jail associated with inmate Xavier T. Douglas (date of birth 11/12/94) with a Spillman name number of 1593717.

3. Based on the facts and circumstances set forth below, I submit that there exists probable cause to believe that up to $3,000 in funds on deposit in an account at the Waukesha County Jail associated with inmate Xavier T. Douglas with a Spillman name number of 1593717 are traceable, at least via circumstantial evidence, to proceeds of Douglas's acts of extortion, committed in violation of 18 U.S.C. § 875(d), and that those $3,000 in funds are therefore:

   a. subject to civil and criminal forfeiture under 18 U.S.C. §§ 981(a)(1)(C) and 984 and 28 U.S.C. § 2461, as property constituting or traceable to proceeds of interstate extortion, in violation of 18 U.S.C. Section 875(d);

   b. subject to civil and criminal forfeiture, under 18 U.S.C. §§ 981(a)(1)(A) and 984 and 982(a)(1), as funds involved in or traceable to money laundering offenses, committed in violation of 18 U.S.C. §§1956 (a)(1) and Section 1957; and

c. subject to seizure for purposes of civil forfeiture under 18 U.S.C. § 981(b) and for purposes of criminal forfeiture under 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(f).

4. The facts set forth in this affidavit are based on my personal knowledge, information I have gained through my law enforcement training and experience, and information I have obtained from others, including other law enforcement officers and witnesses, and documents and records I have reviewed in the course of this investigation.

5. Because I am submitting this affidavit for the limited purpose of establishing probable cause for the requested seizure warrant, the affidavit does not set forth each and every fact that I have learned during the course of this investigation.

6. I am currently conducting an investigation into the extortion of a victim, having the initials J.S., who resides in Maryland. As shown below, Xavier Douglas extorted J.S., in violation of 18 U.S.C. § 875(d), by knowingly transmitting, in interstate commerce, a communication containing a threat to injure victim J.S.'s reputation. Douglas did so by telling J.S. that Douglas would report J.S. to the FBI for J.S.'s purchase of links online that Douglas alleged contained child pornography unless J.S. continued to provide Douglas with money via PayPal. Between in or about November 2018 and August 2019, based on that extortionate threat, J.S. transferred $7,208.83 into Douglas's PayPal accounts.

7. The funds sought to be seized – which consist of up to $3,000 in funds on deposit in an account at the Waukesha County Jail associated with inmate Xavier Douglas with a Spillman name number of 1593717 – are funds that I submit are traceable to proceeds that Douglas obtained from victim J.S. through the extortion scheme.

## Applicable Forfeiture Statutes

8. Title 18, United States Code, Section 981 subjects to civil forfeiture "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation" of, among other offenses, making interstate extortion threats, 18 U.S.C. § 875. *See* 18 U.S.C. §§ 981(a)(1)(C), 1956(c)(7), and 1961(1). Likewise, Section 981, in conjunction with 28 U.S.C. § 2461(c), subjects this same property to criminal forfeiture.

9. Title 18, United States Code, Section 984 (a) provides in part:

(1) In any forfeiture action in rem in which the subject property is cash [or] funds deposited in an account in a financial institution

(A) it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for the forfeiture; and

2

  (B) it shall not be a defense that the property involved in such an offense has been removed and replaced by identical property.

 (2) Except as provided in subsection (c), any identical property found *in the same place or account* as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture under this section.

18 U.S.C. § 984 (emphasis added).

  10. Title 18, United States Code, Section 984(b) provides: "No action pursuant to this section to forfeit property not traceable directly to the offense that is the basis for the forfeiture may be commenced more than 1 year from the date of the offense."

  11. Thus, under Section 984, a court may order the civil forfeiture of monies found in a bank account into which deposits of criminal proceeds subject to forfeiture had been made, up to the amount of the forfeitable deposits that have been made into the account within the prior one-year period, without the need for tracing the funds to be forfeited to any of the specific forfeitable deposits.

  12. Property subject to forfeiture is subject to seizure via a civil seizure warrant under 18 U.S.C. § 981(b)(2) and seizure via a criminal seizure warrant under 18 U.S.C. § 982(b) and 21 U.S.C. § 853(f).

## Facts Supporting Finding of Probable Cause

### Xavier Douglas's 2016 conviction of production of child pornography, making interstate extortion threat, and distribution of child pornography offenses

  13. During 2016, I conducted a federal investigation under case number 305A-MW-8882841/17-CR-04 whereby Xavier T. Douglas was indicted. In that investigation, Xavier Douglas, while posing as a juvenile female online, obtained nude images from an identified juvenile male with the initials of C.H. (full information is known by law enforcement). Douglas, while posing as a girl, threatened to expose C.H.'s nude images unless he sent more. C.H. ended up locating his nude images on Twitter and other public websites. C.H.'s mother then filed a police report. Simultaneously, the FBI also received a Cybertip from the National Center for Missing and Exploited Children. That tip reported that a Twitter account in the name of "clayexposed," later determined to have been created by Xavier Douglas, contained nude images of C.H.

  14. On June 30, 2016, a search warrant was executed at Xavier Douglas' residence at the time, and the contents of his electronic devices was analyzed. Nude and clothed images of C.H. were located, in addition to chats regarding another juvenile having the initials G.P. (G.P. is now an adult).

  15. During his interview, Xavier Douglas admitted to creating fake accounts online and he would post anything he had to in order to make the accounts popular. Then, he would

3

promote himself on those accounts, so that his account with his true identity would become popular. Douglas admitted to creating fake Facebook accounts in various names, including the names of C.H. and G.P. Douglas said that when he came across the real social media accounts of C.H. and G.P. and he saw how popular they were. So Douglas decided to create fake accounts in their names while using pictures of C.H. and G.P. from their real accounts. Douglas also admitted that after obtaining the nude images of C.H., he posted on the fake C.H. social media accounts that he has been exposed, which made his accounts even more popular. Douglas said that once those fake social media accounts had gotten a lot of attention, Douglas would be able to promote his own real social media accounts and that his goal was to get paid by social media companies for using their applications to attract views.

16. Douglas was also asked during his interview what extortion is and Douglas said using information against someone to get what you want or to blackmail. FBI Special Agent Brett Banner told Douglas he was using sextortion with C.H. since he was telling C.H. to send more stuff or it's going to be leaked on the internet. Douglas understood this and was aware that his conduct was illegal. It was also explained to Douglas that he was producing child pornography because the victim of that offense, C.H., was under 18 years of age at the time.

17. Douglas was federally indicted for the production of child pornography, interstate extortion threat, and distribution of child pornography. He ultimately pleaded guilty to stalking by use of a computer system on May 1, 2017. He was sentenced to 16 months in the Federal Bureau of Prisons, followed by three years of supervised release. He began serving supervised release in February 2018. He is now in custody at the Waukesha County Jail but is about to be released.

**Details of current investigation**

18. On September 25, 2019, Special Agent (SA) Laura Goshen of FBI's Baltimore, Maryland Office contacted me. Special Agent Goshen informed me that Detective Trevor Teague of the St. Mary's County Sheriff's Office (Maryland) had contacted SA Goshen. Detective Teague was investigating a case that appeared to involve Xavier T. Douglas, m/b, DOB xx/xx/94, extorting victim J.S. (full name is known by law enforcement) with threats of exposing photographs that J.S. had purchased and that Douglas claimed to be of child pornography. SA Goshen checked the FBI database and located the previous case (305A-MW-8882841) that I had investigated involving Douglas. SA Goshen inquired if I could get into contact with Det. Teague to assist with his investigation.

19. On September 26, 2019, I spoke with Det. Teague and he briefed me on his current investigation. I noticed some similarities in his investigation to my past investigation involving Xavier Douglas. Since I was aware that Douglas was residing in the area of Waukesha, WI, and that the victim in the case lived in Maryland, I offered to take the investigation over federally. Det. Teague agreed to this and forwarded me all of the information he had obtained through the course of his investigation thus far.

20. Upon reviewing the reports from the St. Mary's County Sheriff's Office and the information received through the issuance of subpoenas and search warrants, I determined that

4

victim J.S. had agreed to purchase links, which included images of pornography, from an individual, believed to be Xavier Douglas, on the online chatting application called Snapchat in November 2018. The name on the Snapchat account from which J.S. had purchased the links was an individual having the initials "G.P."

21. This is the same individual having the initials "G.P." whose images Douglas had appropriated to create social media accounts in "G.P.'s" name that Douglas controlled in connection with Douglas's above-described 2016 offense conduct.

22. Per J.S., J.S. thought that "G.P." was selling nude images of himself on Snapchat. J.S. informed me that he had observed "G.P." advertising that "G.P." was selling "nudes" on his Snapchat story. J.S. had assumed that the nudes would be adult pornography.

23. I am aware that Snapchat is a multimedia messaging application that allows pictures and messages to be only available for a short period of time before they become inaccessible to their recipients.

24. J.S. paid for the links by use of PayPal, which is a worldwide online payments system that supports online money transfers. The company operates as a payment processor for online vendors, auction sites, and other commercial users, for which PayPal charges a fee in exchange for benefits such as one-click transactions and password memory.

25. J.S. sent the money to the PayPal account in the name of paypal.me/XAYPREME. J.S. was told by the person J.S. believed to be "G.P." to send the money to this account. Once the payment was made, J.S. received a link to Dropbox, and J.S. downloaded the images from the link onto his cellular phone. J.S. believed some of the images he received were of "G.P." because his pictures matched the Snapchat profile picture for G.P. There was one nude image of "G.P.," and after the purchase was complete, the Snapchat profile in the name of G.P. re-contacted J.S. and informed J.S. that G.P. was actually 17 years of age and that J.S. had just purchased child pornography.

26. The individual operating the "G.P." Snapchat account told J.S. that J.S. would have to send "G.P." additional money through the PayPal account or else "G.P." would report J.S. to the FBI for purchasing child pornography.

27. J.S. did not know if the image was child pornography. J.S. complied with "G.P.'s" demands and J.S. began sending more money to the PayPal account in the name of paypal.me/XAYPREME. J.S. reported that several other people were also possibly involved in the extortion scheme since J.S. began to get contacted by various other individuals on Snapchat, Instagram and via text message to J.S.' cell phone.

28. The phone number used to text J.S. was 262-997-8355. Per Det. Teague, this phone number was determined to belong to US Cellular, and on October 7, 2019 a subpoena had been issued to US Cellular for the number's subscriber information. On November 7, 2019, Det. Teague forwarded the results of this subpoena to me, which showed that this phone account belongs to Xavier Douglas of 4xx W. Main St., Waukesha, WI.

5

29. J.S. then began receiving Snapchat messages from a party with the Snapchat username with the initials of "C.H."

30. This is the same individual having the initials "C.H." whose images Douglas had appropriated to create social media accounts in "C.H.'s" name that Douglas controlled in connection with Douglas's above-described 2016 offense conduct.

31. A person using "C.H.'s" identity then told J.S. to start sending the money to a different PayPal account with the name of paypal.me/Xavierluxemburg.

32. J.S. sent money to the two PayPal accounts 21 times. In fact, J.S. sometimes sent the value of his entire paycheck to avoid having the persons J.S. believed to be "G.P." and "C.H." from reporting J.S. to the FBI for having purchased child pornography.

33. J.S. also told me that J.S. then began to receive communications from unknown individuals who purportedly offered to give J.S. money since he was in college and was giving all his money to the persons Xavier Douglas was impersonating. These individuals were using the Instagram screen names of matthewmellonjr, alyxmogilevich, themicahfaulkner, and richgenofig. These individuals told J.S. to keep making the requested payments and that they would later forward money to J.S. to help him out. But, of course, J.S. never received any money from these people. Xavier Douglas operated these accounts in order to convince J.S. to keep sending Douglas money. Douglas has now admitted to me that he was the only person involved in the scheme and that he had created and was operating all of these online accounts.

34. I asked J.S. if J.S. had any further account information for these individuals. J.S. told me that he did not because he had deleted his social media accounts after making the initial police report and he said these individuals kept using different account names. I was unable to locate the social media accounts operated by these alleged individuals.

35. Det. Teague completed and served a search warrant on PayPal to obtain records pertaining to the PayPal accounts in the names of paypal.me/XAYPREME and paypal.me/Xavierluxemburg.

36. The PayPal search warrant response showed that both of these PayPal accounts, paypal.me/XAYPREME and paypal.me/Xavierluxemburg, had been created by Xavier Douglas with a date of birth of xx/xx/94, which matches Douglas's actual birth date; an address of 4xx W. Main St., Waukesha, WI 53186, which was then Douglas's home address; and email addresses of Xaviertluxemburg@gmail.com and xavierklatten@gmail.com. Det. Teague also informed me that there were multiple other individuals who had made payments to these two PayPal accounts, some of whom had made multiple payments and might also be extortion victims.

37. On October 1, 2019, I received an email from Xavier Douglas' federal probation agent, Agent Andrew Cieslewicz. I discussed this investigation with Agent Cieslewicz and he advised that about one month earlier, Douglas had told Agent Cieslewicz that he needed rent money and that Douglas had asked Agent Cieslewicz for assistance with this. Agent Cieslewicz

also confirmed that Douglas resided at 4xx W. Main St., Waukesha, Wisconsin, with the phone number of 414-865-0528. Agent Cieslewicz advised that this address is a rooming house and that Douglas tends to move between rooms in the building as they become available. I also noticed that the phone number for Douglas of 414-865-0528 was the phone number used to create both of the PayPal accounts in question.

38. On October 1, 2019, I reviewed all of the Paypal search warrant records for the accounts belonging to Xavier Douglas, which had the associated Paypal account numbers of 1851961769800210616 and 1744137058497529456.

For account with ID number 1851961769800210616, the transactions were provided between the dates of November 1, 2018, and August 20, 2019. Under the Payments Received section of the spreadsheet, I located the following approximately $1,873.00 in payments made to the account from J.S.:

11/25/18 $100.00
11/25/18 $100.00
11/25/18 $150.00
11/26/18 $200.00
03/07/19 $500.00
03/21/19 $405.00
04/04/19 $418.00

39. For the account with ID number 1744137058497529456, the transactions were provided between the dates of November 1, 2018 and August 20, 2019. Under the Payments Received section of the spreadsheet, I located the following approximately $5,335.83 in extortion payments that J.S. had made to Douglas's PayPal account ending in 9456:
04/18/19 $5.00
04/18/19 $500.00 (denied)
04/18/19 $500.00 (denied)
04/18/19 $500.00 (denied)
04/18/19 $499.00
05/02/19 $625.00 (denied)
05/02/19 $625.00 (denied)
05/02/19 $613.84
05/16/19 $574.00
05/30/19 $579.69
06/13/19 $627.00
06/27/19 $590.00
07/11/19 $667.70
07/25/19 $588.95
08/08/19 $590.65

40. Thus, J.S. send Douglas a total of approximately $7,208.83.

7

41.     According to the initial report from the St. Mary's Sheriff's Department, J.S. had provided screen shots from his cell phone of information pertaining to this case. On September 30, 2019, I requested a copy of these screen shots from Det. Teague. On October 1, 2019, these images were emailed to me. I reviewed the screen shots. Two of the screen shots were lists of some of the payments that J.S. had sent to Xavier Douglas. In one of the screen shots, the profile picture was of the real Xavier Douglas, whom I recognized from my previous investigation with him. Another screen shot had a message from Xavier Douglas which stated: "[G.P.] said if you dont contact him on Snapchat he is going to contact your school with all the information he has about you and your child pornography."

42.     Another screen shot said: "I told him last week that IDC if he sends you money. Hell his money could help you pay me off but I guess he's worried bout some bad publicity or some shit. Either way IDC. See you in 2 weeks. Try your best for 600."

43.     Lastly, another screen shot stated: "TBH I was gonna come back at you on the 31st for another $700. But TBH I'll only need $200 on the 31st then we are all good and if anyone comes at you after that you send them my wayb."

44.     On October 2, 2019, Agent Cieslewicz advised me that he had some of Douglas's bank account information that might pertain to my investigation. I reviewed that information. It included a screen shot of Douglas's Venmo application, which showed the screen name as Xavier Douglas and the username as @XWAIMZ; a screen shot of banking information that showed Xavier's name, the email address of thexaviertdouglas@gmail.com, the phone number of 661-262-9384, the address of 4xx W. Main St., #11, Waukesha, WI, the routing number of 031101279, and the account number of 156118204999. This routing and account number is the same routing and account number provided in the PayPal search warrant return for Xavier's PayPal account with the account number 1851961769800210616. This routing and account number are listed as being Xavier's checking account information through The Bancorp Bank.

45.     Agent Cieslewicz also forwarded a screen shot of Douglas's personal Snapchat account, which has the display name of Xavier and username of xavierdecaux. Two of the email addresses associated with the one of the PayPal accounts were similar names of XavierTDecaux@gmail.com and xecaux@gmail.com. I also received a screen shot that showed a list of some of Douglas's friends on Snapchat and one of the names was the display name with the initials of C.H. with a username of hain32.

46.     On October 30, 2019, an administrative subpoena was issued to Snapchat for the subscriber information used to register the account with the username of hain32. I received those results on November 18, 2019, which showed that the email address associated with this account is [C.H.]32@gmail.com and the IP address used to create the account was 65.30.129.50 on May 25, 2016 at 21:14 UTC. I then determined that this IP address was assigned to Charter Communications by using the WhoIs Arin IP Address Lookup Database website. An administrative subpoena was then issued to Charter Communications to determine what customer account was assigned this IP address on May 25, 2016 at 21:14 UTC. Charter Communications responded back that they do not have these records anymore.

8

47. On October 23, 2019 I submitted an administrative subpoena to Google requesting the subscriber information on the various email accounts which were associated with the two PayPal accounts in Douglas's name. The email addresses listed on the PayPal search warrant results that are associated with the PayPal accounts are Xavierluxemburg@gmail.com, xavierklatten@gmail.com, XavierTDecaux@gmail.com and xecaux@gmail.com. On November 7, 2019, I received the subpoena results. Two IP addresses used to access the email account xavierklatten@gmail.com were 65.30.143.233 and 24.209.131.183. I used the Arin WhoIs IP Address Database website to determine that these IP addresses are assigned to Charter Communications. An administrative subpoena was submitted to Charter Communications to see who the subscriber was who was assigned these two IP addresses at times when the email address xavierklatten@gmail.com was utilized. The results showed that both IP addresses were assigned to Jennifer Dowling of 4xx W. Main St., Room 35, Waukesha, which is the same rooming house where Douglas is residing.

48. I submitted a surveillance request so surveillance could be conducted on Douglas at his residence at 4xx W. Main St. in Waukesha. On October 21, 2019, I was informed that Douglas was being assigned to a new probation agent by the name of Agent Patricia Savasta. Agent Savasta confirmed that Douglas was still residing at this rooming house and was currently living in room 47B. She also confirmed that he was then employed at Walmart, located at 2000 S. West Avenue in Waukesha.

49. On November 21, 2019, Agent Savasta met with Douglas in person and confirmed that he was currently residing in Room 47B and he had no plans to move. Per Agent Savasta, Douglas said he had quit his job at Walmart and was now working as the rooming house manager, so he does not go out much. As the rooming house manager, Douglas was receiving discounted room and board at the rooming house and he had no other source of income through legit employment.

50. On October 29, 2019 I spoke with J.S. and inquired about the images that J.S. had purchased from the party he met on Snapchat using the name of "G.P." Det. Teague had tried to recover these images from J.S.' cell phone, but was unable to since J.S. had deleted them after he was told they may contain child pornography. J.S. told me that he had made three initial purchases, which was one purchase per link, so he purchased a total of three Dropbox links. Each link contained images of a different male. The first link J.S. believed contained images of who J.S. believed was G.P. There was one nude full-body image of G.P. and a few clothed, selfie-type images of G.P. J.S. told me that he conducted a Google Images internet search of the name G.P. and had found multiple results, including the clothed images from the link. J.S. said it appeared that these were images for G.P.' social media accounts. J.S. took screen shots on his cell phone of the images J.S. had located of G.P. online, which were the same images from the link he purchased and forwarded those pictures to me. The second file J.S. purchased was about eight or nine images of the same unknown male, and one video of the male. This male is nude, but J.S. said he could not tell if the male was a juvenile or adult. The third file J.S. purchased was four or five nude images of another unknown male. He also could not determine if this male was an adult or child.

9

51. On October 29, 2019, I conducted an internet search on Google for G.P.'s full name. There were multiple results stating that he is a popular Instagram star from Texas. Several pictures of him appear online, and the images of G.P. match the person in the pictures that were forwarded to me from J.S. Per the website, birthdaycelebs.com, G.P. was born in November 2000, which would make him 18 years old. It states that G.P. is a "social media personality best known for his engaged following on Instagram and Twitter. He has also dabbled in YouTube, Vine and YouNow." Based on G.P. being a known person on social media and YouTube, the fact that Xavier Douglas has used G.P.'s name as a fake persona in connection with his 2016 offense conduct, that the images of G.P. could make a person believe that G.P. was a juvenile, and that none of the accounts used to extort J.S. belonged to G.P. or registered to an IP address in Texas where G.P. is believed to reside, I submit that Xavier Douglas was posing on SnapChat as G.P. and was using public images of G.P. from the internet. Therefore, I applied for and was granted a residential search warrant for Douglas's residence at 4xx W. Main St., Room 47B, Waukesha, in the Eastern District of Wisconsin.

52. The residential search warrant was executed at Douglas's residence on January 22, 2020. Douglas was present and agreed to provide a statement to investigators.

53. Douglas admitted to having befriended J.S. after Douglas had initially created Facebook accounts in the names of C.H. and G.P. in 2016. Douglas said that he and J.S. became Facebook friends with these accounts Douglas was operating. Douglas stated that after the first investigation, the Facebook account in the name of C.H. was deactivated by the FBI, but that the G.P. account had remained active.

54. Douglas stated that when Douglas was released from custody after the first investigation, he accessed the internet by using his roommate's cell phone in the halfway house he was residing in. Douglas stated that he then created the SnapChat account in the name of G.P. and he posted in his SnapChat story that he, pretending to be G.P., was selling links to nude images. Douglas explained that since J.S. had been Facebook friends with Douglas's accounts, J.S. showed up as a contact in the SnapChat account and J.S. was able to view what the G.P. SnapChat account was posting. When J.S. saw the post about G.P. selling links to nude images, J.S. offered to purchase links.

55. Douglas admitted to investigators that he did tell J.S. that he would report J.S. to law enforcement for buying child pornography if J.S. did not continue to send money to Douglas's PayPal account. Douglas stated that since J.S. complied, Douglas decided to continue to demand money because Douglas had limited income and was purchasing Uber rides and food. Douglas stated that when Douglas moved out of the halfway house and ended up not having further regular internet access, he told J.S. he would be traveling and that J.S. needed to continue to deposit money into the PayPal account each month, which J.S. initially did. Douglas said then in August 2019, J.S. stopped sending money and Douglas could no longer locate him. Douglas admitted to operating this scheme alone and admitted to operating all of the various online accounts that were used to contact J.S.

56. Douglas stated that he had used the various accounts to appear more realistic.

10

57. Douglas's federal probation agent was advised of Douglas's admissions. Douglas told his probation agent that he was afraid he would re-offend and requested to have his probation revoked. Douglas therefore was placed into custody and is currently being held at the Waukesha County Jail. When he was booked into the jail, Douglas had $3,000 with him, which was placed into his jail account under the Spillman name number of 1593717.

58. I submit that there exists probable cause to believe that the $3,000 in Douglas's jail account is traceable to his extortion scheme.

59. When Douglas was interviewed, he stated that he had obtained only about $2,000 from extorting J.S. and that he had spent that money on Uber rides and fast food. He did not account for the additional approximately $5,208.83 in criminal proceeds that he had obtained from J.S. I submit that one reason why Douglas had under-reported how much he had obtained from J.S. was to conceal that the $3,000 he has put into his inmate account at the Waukesha County Jail is traceable to proceeds of his extortion scheme.

60. I do not know the exact time period when Douglas worked at Wal-Mart, but he quit in November of 2019. From my interview with Douglas, he was not employed at Wal-Mart for a lengthy time period and was not saving any of his earnings. He also mentioned having worked "odd jobs" here and there after beginning supervised release and before working for Walmart, which indicates he was not working at Wal-Mart that entire time since he got out of jail.

61. In any event, Douglas told me that his paychecks were all deposited into his PayPal account, apparently the same account where the extortion money was going, because his bank account had been shut down due to having too many overdrafts. The only financial account Douglas has established within the past year, of which I am currently aware, is his current PayPal account. He used a PayPal card in the same manner as a debit card to use the money in his PayPal account to pay for things.

62. It is also clear that Douglas's work at the boarding house could not have been a legitimate source of the funds sought to be seized. Because Douglas was receiving only room and board at a reduced rate in exchange for doing so, I submit that the money that Douglas brought with him to the Waukesha County Jail was not obtained from his work at the boarding house.

63. Because Douglas, by his own admission, deposited all of his funds into his PayPal account, then that account was presumably the source of the $3,000 he then put on account at the Waukesha County Jail.

64. Moreover, as set forth in paragraph 39 above, within the past 12 months, Douglas had received $5,335.83 in extortion payments from J.S. in Douglas's PayPal account ending in 9456.

65. Accordingly, as noted in paragraphs 9-12 above, under 18 U.S.C. § 984, up to $5,335.83 in funds traceable to that PayPal account would be subject to forfeiture without the

11

need to strictly trace those funds to extortion proceeds. That is because, as noted above, a court may order the civil forfeiture of monies found in a bank account into which deposits of criminal proceeds subject to forfeiture had been made, up to the amount of the forfeitable deposits that have been made into the account within the prior one-year period, without the need for tracing the funds to be forfeited to any of the specific forfeitable deposits.

66. I submit that a restraining order under 21 U.S.C. § 853(e) may not be sufficient to assure the availability of the funds for forfeiture because I have been advised of cases in which, even after a restraining order or similar process has been issued to a financial institution, the funds sought to be restrained were not effectively restrained by the financial institution. In my judgment, seizure warrants would be the most effective way to assure that the funds at issue would remain available for forfeiture.

## Conclusion

67. For these reasons, I submit that there exists probable cause to believe that up to $3,000 in funds on deposit in an account at the Waukesha County Jail associated with inmate Xavier Douglas with a Spillman name number of 1593717 are traceable to proceeds of Douglas's acts of extortion, committed in violation of 18 U.S.C. § 875(d), and that those $3,000 in funds are therefore:

    a. subject to civil and criminal forfeiture under 18 U.S.C. §§ 981(a)(1)(C) and 984 and 28 U.S.C. § 2461, as property constituting or traceable to proceeds of interstate extortion, in violation of 18 U.S.C. Section 875(d);

    b. subject to civil and criminal forfeiture, under 18 U.S.C. §§ 981(a)(1)(A) and 984 and 982(a)(1), as funds involved in or traceable to money laundering offenses, committed in violation of 18 U.S.C. §§ 1956 (a)(1) and Section 1957; and

    c. subject to seizure for purposes of civil forfeiture under 18 U.S.C. § 981(b) and for purposes of criminal forfeiture under 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(f).

###